UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 20-10255-IT |
| | ) | |
| RONALD HALL, a/k/a "RIZ," | ) | |
| Defendant. | ) | |

## SENTENCING MEMORANDUM OF THE UNITED STATES

The United States respectfully submits this sentencing memorandum in support of the government's recommendation sentencing the defendant to serve 216 months in prison in this sex trafficking case.  On August 9, 2022, the defendant pled guilty to four counts on the Indictment charging him with the following crimes: Sex Trafficking in violation of 18 U.S.C. § 1591 (Counts 1-4). ECF No. 104.  Not only does the Final Pre-sentence Report ("PSR"), issued on October 27, 2022, reflect that the defendant has spent a good majority of his adult life violating the law in several states, but his conduct in exploiting the vulnerabilities of numerous young women through psychological manipulation, force, and fear to prostitute themselves for his benefit, warrants this significant sentence.

Pursuant to the plea agreement, the parties jointly agree to recommend a below-guidelines sentence somewhere from 180-216 months, followed by a period of 5 years of supervised release, a mandatory special assessment of $400, an additional special assessment of $5,000 pursuant to 18 U.S.C. § 3014 unless the Court determines the defendant is indigent, restitution to be determined by the Court at or following the date of sentencing, and forfeiture as set forth in the plea agreement.[1]  In addition, as outlined in the plea agreement and pursuant to the Sex Offender Registration and Notification Act and the laws of the Commonwealth of

---

[1] As discussed later herein, restitution is mandatory.

Massachusetts, the defendant is required to register as a sex offender following his incarceration and to keep that registration current. The government asserts this is a fair and just sentence that comports with the factors outlined in 18 U.S.C. § 3553(a).

## I.      SENTENCING GUIDELINES/GUIDELINE CALCULATIONS

### 1.      Legal Framework

The advisory United States Sentencing Guidelines ("Guidelines" or "USSG") are "the starting point and the initial benchmark" in sentencing. *Gall v. United States,* 552 U.S. 38, 49-50 (2007). The Guidelines must be properly calculated and considered, but ultimately the Court must craft a sentence that sufficiently accounts for the sentencing factors and objectives outlined in 18 U.S.C. § 3553(a).  *Id*. at 49-50. Because each case is unique, the Court must make a particularized analysis of the nature and circumstances of the offense and the defendant's history and characteristics. *See* 18 U.S.C. § 3553(a)(1). The Court must then impose a sentence that sufficiently reflects the seriousness of the crime, promotes respect for the law, and provides just punishment, and the sentence should adequately deter criminal conduct, protect the public, and provide any necessary education, training or treatment. *See* 18 U.S.C. §§ 3553(a)(2)(A)-(D). The Court must also strive to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. *See* 18 U.S.C. § 3553(a)(6). After determining the appropriate sentence, the Court should adequately explain its rationale to "allow for meaningful appellate review and to promote the perception of fair sentencing." *See Gall*, 552 U.S. at 50.

### 2.      U.S.S.G. Calculations

The defendant faces a statutory maximum sentence of life on all four counts of his Sex Trafficking conviction (Counts 1-4). Additionally, the defendant faces a mandatory minimum of 5 years of supervised release up to life on his Sex Trafficking convictions (Counts 1-4).

A final PSR was issued by U.S. Probation on October 27, 2022.  The calculations outlined in the plea agreement are consistent with those outlines in the PSR.

Both the plea agreement and the PSR determined the defendant's Total Offense Level ("TOL") to be 35. PSR ¶ 65.  Both determined that the adjusted offense level for Group One (Victim 1), Group Two (Victim 2), Group Three (Victim 3  )and Group Four (Victim 4), and Group Five (Vicitm5) was 34 for each group.  PSR ¶ 65.  Both the plea agreement and the PSR also assigned a multiple count adjustment pursuant to USSG § 3D1.4 which resulted in 4 units added to the adjusted offense level which results in a combined adjusted offense level of 38. PSR ¶¶ 58-60.  After a three-level reduction for acceptance of responsibility, defendant's Total Offense Level ("TOL") is 35. PSR ¶¶ 58The defendant's criminal convictions result in a subtotal criminal history score of 10.  *See* PSR ¶79.  Based upon a TOL of 35 and a CHC V, the advisory guidelines sentencing range ("GSR") is 262-327 months. *See* PSR ¶ 137.

## II.   DISCUSSION OF 18 U.S.C. § 3553 FACTORS

A review of the sentencing guidelines and a holistic consideration of the Section 3553(a) factors demonstrate that a 216-month sentence of incarceration is warranted for the defendant under the facts of this case. The government asserts that its recommendation accounts for the factors outlined in 18 U.S.C. § 3553(a) that the Court must consider. The factors include, but are not limited to, the nature and circumstances of the offenses, the history and characteristics of the defendant, the seriousness of the offenses, promoting respect for the law, providing just punishment for the offenses, the need to deter the defendant and others, the need to protect the public from the defendant's crimes, and the need to avoid unwarranted sentencing disparities**.**

### 1.   Factual Background - The Defendant Manipulated and Prostituted Young Women for Profit

The government asserts that the unchallenged factual information contained in the PSR,

the evidence presented at the Rule 11 hearing, and the information contained herein, support its position that a committed sentence of 216 months is fair, just and appropriate in this case. The evidence in this case demonstrated that the defendant manipulated and preyed on vulnerable young women to exploit them in order to make money as a pimp and to run a prostitution business. There is no doubt he chose vulnerable young women to exploit for monetary gain.

Although there is no one profile of a trafficker, all traffickers are, by definition, predators who are driven by high profits and low risks. They seek out the most vulnerable to exploit. All too often, sex trafficking victims never have the courage to report what has happened to them because they are humiliated by and ashamed of what they were forced to do. They are afraid of being judged. They are afraid of being condemned by those who believe they were willing participants. They are afraid of not being believed. The courage and strength demonstrated by the victims in this case is important to note. At sentencing, the government expects the Court will hear, via impact statement or in person, from at least one of the women the defendant victimized. Her/their stories, the government believes, will further support the joint sentencing recommendation.

The defendant was a skilled pimp when he met each of his victims. He first acted as many of his victim's drug dealers and convinced most of the victims that that he loved them. He exploited all his victims using force and threats. From at least January 2010 through in or about January 2019, the defendant, a/k/a, "Riz, recruited victims A,B,C,D,E and a number of other girls, on false promises of good earnings, then used physical assault, intimidation, isolation, and control to create a climate of fear that compelled Victims A, B,C,D,E , and others, to continue performing commercial sex acts for his profit.[2] During that time period, the defendant, along with others,

---

[2] In this sentencing memorandum, to protect their identities, the victims are referenced by letters (i.e., Victim A, B, C, D, E) consistent with how they are identified in the Indictment.

promoted, managed, established, carried on, and facilitated the defendant's prostitution business in violation of a number of federal and state laws.

The defendant recruited various women to prostitute through Backpage or through other women who were already working for him. The defendant managed the day to day operations of the business, such as posting advertisements online and arranging dates through Backpage or other online escort services. When the defendant was present, the women paid him directly; when he was not the victims gave money to his bottom. The defendant paid for the women's food, clothing, and grooming, and promised them cars and houses if they continued to pay him after their dates. The defendant traveled to numerous states in order to prostitute his victims. These states included Massachusetts, Rhode Island, Connecticut, New York, New Jersey, Florida and Nevada.  The defendant set quotas for his victims. If one did not meet these quotas, he beat her. In addition, he threatened the victims when they did not make enough money, and he assaulted other victims when they hid money from him.

Victim 1 stated that she met the defendant in Boston in 2010 when she was working the streets as a Prostitute.  After meeting the defendant, Victim 1 said that the defendant asked her to move to Rhode Island and she did.  During her time working for the defendant, Victim 1 would go on out calls (Prostitution calls) and see 3-4 clients per day. During these calls, Victim 1 would go to Connecticut, Massachusetts, New Jersey, Miami, Florida and Nevada. According to this Victim, during a large majority of these outcalls she had sexual intercourse with the Johns she had dates with.  Additionally, Victim 1 stated that the defendant beat her and the other girls on a regular basis and even made some of them get the tattoo "Riz" (the defendant's nickname) on their body.  Some of the worst things that Victim 1 stated that the defendant did to her were, forcing her to have sex with him, hitting her with a sharp heel on her face, whipped her with a

belt when she was necked, punched her so bad that her eye was swollen shut, locked some of the girls in a dog cage and hit her with a baseball bat. Victim 1 believes that the defendant beat her at least 15-20 times.

Victim 2 met the defendant in 2014 when she was working as a prostitute. She stated that she initially met the defendant to get drugs but shortly after their first interaction, they exchanged phone numbers and she began working for the defendant out of a massage parlor where she had sexual intercourse and oral sex with her customers. About a month after she started working for the defendant, Victim 2 started going on individual dates and outcalls for the defendant. During this time she would see between 5-10 Johns per day where intercourse occurred 98-99% of the time. Victim 2 travelled from Rhode Island to Massachusetts, Connecticut, New York and Jersey for these dates. For each date Victim 2 had, she gave all of the money to the defendant, and he would give her drugs and take her to get her nails done. Victim 2 said that the defendant was extremely violent with her and all of the other girls he interacted with. For example, the defendant punched and kicked her multiple times and she even saw the defendant push Victim 3 down the stairs.

Victim 3 met the defendant in approximately 2014 or 2015 when she was only 20 years old. She met the defendant when she was addicted to heroin and crack cocaine. She initially thought she was just going to spend some time with the defendant to get drugs and then leave, but the defendant promised her fancy clothes, travel, drugs and a place to live. She was homeless at the time. Victim 3 testified that she worked for the defendant for 2-3 years, on and off and she would give all of the money she made selling herself to the defendant. Victim 3 went on outcalls and dates in Massachusetts, Connecticut, New Jersey and Las Vegas, Nevada. Victim 3 had intercourse with most of her clients and she stated the defendant was violent with her and all of

the other girls. Some of the worst examples she remembered were, the defendant threw a heel at her head causing a gash, the defendant hit her regularly and physically assaulted the other girls in front of her.

Victim 4 met the defendant for the first time in 2014 when she was addicted to heroin.  When Victim 4 met Hall she was already working as a prostitute.  At this point the defendant then contacted to her and pretended to be a John and recruited her.  Victim 4 then began working as a prostitute for the defendant and she gave all the money she made to him in exchange for drugs. Shortly thereafter, Victim 4 began living with the defendant and going on outcalls seven days a week.  Victim 4 did these calls in Massachusetts, Rhode Island, Las Vegas and casinos in Connecticut. According to Victim 4, these dates involved intercourse.  Victim 4 stated that if the girls did not meet their quotas, the defendant would not give them drugs or physically harm them.  Some of the most vivid instances that Victim 4 observed the defendant harming the girls were, throwing a large vase at her, hit her with a belt multiple times, punch Victim 3 in front of her and break another girls finger when she did not make enough money.

Victim 5 started to work for the defendant in 2015. The defendant would pick her up and drive her to dates with Johns in Connecticut, Rhode Island and Massachusetts.  At most of Victim 5's dates she had sexual intercourse with the Johns.  After a few months of working for the defendant, Victim 5 moved in with him and other girls that lived there at the time. Victim 5 said the defendant regularly abused her. Some of the instances that Victim 5 observed the harm were, he hit all of the girls on a number of occasions, he threw a dumbbell at her, stabbed another girl with a knife through her skin, and picked her up and threw her to the ground and punched her multiple times.

2.      **The Defendant's Criminal History and Characteristics**

The government asserts that the defendant's criminal history and personal characteristics weigh in favor of the sentence requested by the United States.

In addition to the nature and circumstances of the offense, the defendant's long and serious criminal history supports a sentence of 216 months. The longevity and nature of the defendant's criminal career demonstrates he is a predator with little likelihood of rehabilitation. Since age 25, the defendant has been convicted of a multitude of offenses that has resulted in a Criminal History Category calculation of V. *See* PSR ¶ 79. Those offenses involved assaulting and intimidating others, possessing weapons, and promoting prostitution activities.

The majority of the defendant's convictions demonstrate that there is substantial a risk that he will engage in violence against others once released from incarceration. The defendant has been convicted of at least two offenses involving assaulting or intimidating victims. Those convictions include and behavior, likely to facilitate the other violent behavior he engaged in that victimized others. As early as the age of 25, the defendant was convicted of illegally possessing a firearm and only a year later, at the age of 26, the defendant was convicted of armed assault to murder and assault and battery with a dangerous weapon.

In sum, the defendant's criminal history and related conduct, show that he is predisposed and willing to use violence against victims to commit crimes. As a result, a sentence of 216 month is appropriate.

3.      **The Requested Sentence is Needed to Reflect the Seriousness of the Offenses**

The seriousness of the crimes for which the defendant is pleading guilty cannot be underscored or minimized. He has significantly and negatively affected the lives of numerous young women through his exploitive criminal actions. The continuing impact the defendant's

crimes have had on his victims will be reflected in a Victim impact statement that will be given by one of the Victims at sentencing.

These victims are not abstractions or objects — they are real people who experienced repeated exploitation by the defendant. A significant term of imprisonment reinforces, to the defendant and to others who are tempted to follow in his footsteps, that these crimes are exceedingly grave in nature and it would thus promote respect for the law.

### 4.    Specific and General Deterrence

Specific and general deterrence are also factors for the Court to consider.  *See* 18 U.S.C. §3553(a)(2)(B), (C) (the district court may impose a sentence "to afford adequate deterrence to criminal conduct"). The requested sentence would act as a deterrent, both to the defendant and to others who are inclined to commit similar crimes, and would protect the public and the vulnerable victims in this case.[3]

A sentence of 216 months incarceration would comport with the goals of specific deterrence.  As outlined in the defendant's PSR, his numerous arrests and convictions for serious crimes show demonstrate his disregard for rules and for the law. He has failed to learn that the criminal justice system will punish those who repeatedly ignore the law. He did not get the message of compliance with society's laws from his prior incarcerative sentences, so this sentence needs to make that point clear. The government requests the Court to sentence the defendant as recommended in order to make it clear that his continued criminal conduct will not be permitted. The defendant must be held accountable for his actions.

---

[3] As a special condition of supervised release, the PSR requests that the defendant be prohibited from contacting any of the victims in this case.  The government concurs in this request and asks that a no-contact order related to Victims 2, 3 ,4, and 5, be entered on the Judgment.  It is the government's understanding that the defendant does not object to this special condition.  The government reserves the right to address all other special conditions of supervised release at the sentencing hearing.

An equally important consideration here is general deterrence. The government's recommended sentence will also serve to protect the public from further crimes of the defendant and will also send the appropriate message to other sex traffickers. That message would indicate that human trafficking will not be tolerated and the consequences for engaging in such activities are steep. A sentence of 216 months is an appropriate one which will clearly communicate that message. This recommended sentence is also "sufficient, but not greater than necessary," to account for this conduct and to accomplish the goals of 18 U.S.C. § 3553(a).

## III.   MANDATORY RESTITUTION IS REQUIRED IN THIS CASE UNDER 18 U.S.C. § 1593(A)

Title 18, United States Code, Section 1593(a) expressly requires that this Court "shall order restitution for any offense under this chapter," which includes the offense of conviction in Count 1. *See United States v. Mammedov*, 304 Fed. App'x 922, 927 (2d Cir. 2008) (stating that "the express terms of 18 U.S.C. § 1593 require that the victims in this case, *i.e.*, persons who engaged in commercial sex acts within the meaning of 18 U.S.C. § 1591, receive restitution, notwithstanding that their earnings came from illegal conduct"); *United States v. Fu Sheng Ko*, 620 F. 3d 1158, 1164 (9th Cir. 2010) (observing "the Trafficking Act mandates restitution that includes a defendant's ill-gotten gains"); *United States v. Webster*, 2011 WL 8478276, at *3 (9th Cir. 2011) (recognizing "[t]he statutory language is clear that mandatory restitution includes not only the victims' actual losses, but also the defendant's ill-gotten gains"); *see also United States v. Graham*, 2019 WL 6467812 (D.M.E. 2019).

Section 1593(b)(1) further specifies that the defendant shall be ordered to pay "the victim . . . the full amount of the victim's losses," as defined in Section 1593(b)(3). The "full amount of the victim's losses" includes the definition of personal losses set forth in 18 U.S.C. § 2259(b)(3),

"and shall in addition include the greater of the gross income or value to the defendant of the victim's services or labor or the value of the victim's labor as guaranteed under . . . the Fair Labor Standards Act [(FLSA).]"  18 U.S.C. § 1593(b)(3). Therefore the defendant must pay the victim either what the victim would have earned in minimum wages and overtime pay under the FLSA or, if the work performed was valued higher than minimum wage, what the victim would have earned at that rate.[4] Gross proceeds should also not be offset by any expenses that the defendant may allege to have paid to support the victim, such as lodging or food, irrespective of whether those expenses came out of the victim's earnings. *See United States v. Williams*, 5 F.4th 1295, 1304-08 (11th Cir. 2021) (holding that when calculating "the greater of the *gross* income or value to the defendant of the victim's services or labor," the TVPA does not require that the award be offset for any benefits received or earnings kept by victim).  The Court also must order restitution "without consideration of the economic circumstances of the defendant."  *See* 18 U.S.C. § 3664(f)(1)(A).

Section 1593(c) also indicates who should be considered a victim for purposes of restitution, defining the term to mean an "individual harmed as a result of a crime under this chapter." *See United States v. Robinson*, 508 Fed. App'x 867, 870 (11th Cir. 2013) (concluding that named victim of charged sex trafficking offense fell "squarely within this definition"). The statute does not specifically indicate that the victim must be identified in a charged count in order to be entitled to restitution.  Therefore, identified Victims 2, 3, 4, and 5 should be entitled to restitution.

Regarding the proper calculation and determination of restitution, Section 1593(b)(2)

---

[4] Prevailing wage data may be found at: www.flcdatacenter.com. *See* U.S. Department of Labor Office of Foreign Labor Certification, *Online Wage Library*, FOREIGN LABOR CERTIFICATION DATA CENTER, www.flcdatacenter.com.

requires that any order of restitution be "issued and enforced in accordance with section 3664." Under 18 U.S.C. § 3664(e), the government bears the burden of establishing the victim's losses by a preponderance of the evidence. *See United States v. Hasson*, 333 F. 3d 1264, 1276 n.14 (11th Cir. 2003). "The amount of restitution can be determined on the basis of evidence heard during trial, undisputed statements in the Presentence Investigation Report, or evidence presented at the sentencing hearing." *United States v. Roberts*, 464 Fed. App'x 796, 802 (11th Cir. 2012).

This Court "need only estimate, based on facts in the record, the victims' losses with some reasonably certainty."  Webster, 2011 WL 8478276, at *3 (citing *United States v. Doe,* 488 F. 3d 1154, 1160 (9th Cir. 2007) (internal quotation marks omitted)). "'So long as the basis for reasonable approximation is at hand, difficulties in achieving exact measurements will not preclude a trial court from ordering restitution.'" *United States v. Futrell*, 209 F. 3d 1286, 1292 (11th Cir. 2000) (quoting *United States v. Savoie*, 985 F. 2d 612, 617 (1st Cir. 1993)). The amount of restitution need not "be proven with exactitude" because "determining the dollar amount of a victim's losses attributable to the defendant will often be difficult" and "such a determination will inevitably involve some degree of approximation." *In re Sealed Case*, 702 F. 3d 59, 66 (D.C. Cir. 2012) (quotations and citations omitted). *See, e.g., United States v. Lewis*, 791 F. Supp. 2d 81, 92 (D.D.C. 2011) (calculating value of victim S.H.'s services as $400 x 914, the average amount (between $300 and $500) earned by one victim for the number of days (914) she worked for defendant, resulting in $365,600 recoverable as ill-gotten gains).

Based on conversations with defense counsel, it appears that the defendant will be requesting a 60-day continuance to determine restitution separate from the sentencing hearing. The government does not object to this.  The government will provide restitution calculations to

the Court prior to this date.

## IV.    CONCLUSION

The defendant committed heinous, vile, and degrading crimes against his victims solely for his own profit. He repeatedly victimized and exploited vulnerable young women.  The facts of this case call for a significant sentence. The government believes a 216-month sentence is appropriate and reasonable when considering all of the factors enumerated in 18 U.S.C. §3553(a). As such, the government respectfully urges this Court to impose this sentence.

Respectfully submitted,
RACHAEL S. ROLLINS
United States Attorney

By:    */s/ Evan Gotlob*
EVAN GOTLOB
Assistant U.S. Attorney


Dated:  October 27, 2022




**CERTIFICATE OF SERVICE**

I, Evan Gotlob Assistant United States Attorney, do hereby certify that this document was electronically served on all parties on this date.

*/s/ Evan Gotlob*
EVAN GOTLOB
Assistant U.S. Attorney